FARMERS & MERCHANTS NATIONAL BANK OF BEL AIR *v.* BURL E. ANDERSON ET AL.

*Mortgage Obtained by Fraud—Rights of Assignee—Burden of Proof—Purchaser of Mortgaged Land—Right to Question Mortgage.*

Where a mortgage was obtained by fraud, or the consideration therefor has failed, an assignee of the mortgage has the burden of proving that he took the assignment as a holder in due course for value and before maturity, and that the assignment states that it is "for value received" is not sufficient for this purpose.                                    p. 644

An assignee of a mortgage takes it and the debts secured thereby upon the same terms and subject to the same equities and defenses as it was subject to in the hands of the assignor.

p. 645

Mortgagees who purchased the land at a sale under the mortgage, "subject to" a prior mortgage, and who paid therefor by merely crediting the mortgagors with a named amount, were not estopped, as against an assignee of the prior mortgage, not shown to be a holder in due course for value and before matur-

ity, to assert that the prior mortgage had been obtained by fraud, or that the consideration therefor had failed.

pp. 646, 647

*Decided March 23rd, 1927.*

Appeal from the Circuit Court for Harford County, In Equity (HARLAN, J.).

Bill by Burl E. Anderson and Sarah E. Anderson, his wife, against Jacob S. Doxen, D. Emory Ely, and the Farmers and Merchants National Bank of Bel Air. From the decree rendered, the last named defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John L. G. Lee,* for the appellant.

*Robert H. Archer, Jr.,* with whom was *W. Worthington Hopkins* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The facts of this case are uncontradicted and may be thus stated: Burl E. Anderson and Sarah E. Anderson, his wife, own two tracts of land in Harford County. One they acquired on July 30th, 1924, from John Ryan, subject to a balance of $1,000 on a mortgage to D. Emory Ely, which balance is still unpaid and unsatisfied. The other they acquired in 1919 from George E. Harkins *et al.,* and on July 7th, 1924, they conveyed that parcel to John F. Joines and wife, subject to an unpaid balance of $2,600 on a mortgage to Tony S. Ward. They sold it to Joines and his wife for $8,700, of which $2,600 remained in the Ward mortgage, $4,700 was represented by a mortgage from the purchasers to Anderson and his wife, and the balance of $1,400 was to be paid in cash. But the Joineses had no cash, and they arranged, with the assent of the vendors, to secure it through Jacob A. Doxen, then an attorney practicing in Harford County, in the following manner, that is to say:

Joines and his wife were to execute to Doxen a mortgage for $1,400 on the Harkins tract, and he was to apply the proceeds of that mortgage, first to the payment of the $1,000 Ely mortgage which the Andersons still owed on the Ryan tract, and second to pay the balance, $400, to the Andersons in cash. Pursuant to that arrangement, Joines and his wife, on July 8th, 1924, executed both mortgages, the mortgage to Doxen being recorded first. But Doxen failed to pay the $1,000 needed to satisfy the Ely mortgage, or the $400 in cash to the Andersons, but on April 16th, 1926, assigned the mortgage to the Farmers and Merchants National Bank of Bel Air, which assignment was recorded on September 20th, 1925. Default having occurred, Doxen as the attorney named in the mortgage proceeded on March 27th, 1925, to foreclose the Anderson mortgage for $4,700 on the Harkins tract, and reported a sale thereof subject to the Ward and Doxen mortgages to Burl E. Anderson and wife, the mortgagees, for $882.20, which sale was, on August 3rd, 1925, finally ratified. So that the Andersons again owned the Ryan tract, subject to the Ely mortgage, which Doxen was to satisfy out of the proceeds of the $1,400 Joines mortgage, but did not, and the Harkins tract, subject to a $2,600 balance on the Ward mortgage, and $1,400 on the Doxen mortgage. The Andersons for a time were under the impression that the Ely mortgage had been satisfied, but they were informed during 1925 that it had not been paid, and Anderson, as soon as he learned that, promptly called upon Doxen to pay it and he told him that he, Doxen, would pay it "right then." He did not, however, pay it then or at all, and in September, 1925, Anderson, his wife, and Ely, went to Doxen's office to have him pay the mortgage, but he put them off, saying that he was "too busy," but telling them to return a few days later, which they did, but when they did, they found that he had absconded. Thereafter Ely threatened to foreclose his overdue mortgage on the Ryan tract and the Farmers and Merchants National Bank threatened to foreclose its mortgage on the Harkins tract,

whereupon Mr. and Mrs. Anderson filed this bill to restrain the threatened foreclosures. A preliminary injunction issued, and thereafter the several defendants answered and the case proceeded to a hearing. Testimony was taken which established the facts stated, and at the close of the hearing the case was submitted, and the trial court decreed that the $1,400 mortgage to Doxen was null and void, and that the Farmers and Merchants National Bank of Bel Air should release it. From that decree this appeal was taken. It may be added that the bank offered no testimony to explain how it came into possession of the mortgage, or what consideration it paid for it, or why it kept the assignment of it to the appellant for over five months without recording it.

The appellant's contention is that the mortgage was given to Doxen to sell, that he sold it to the bank and got the money for it in April, 1925, and that therefore there was no failure of consideration, and that the bank acquired a valid title as a purchaser in good faith for value of the mortgage, and that it has an absolute right to foreclose and collect it. The difficulty about that contention, however, is that the facts to support it are not in the record, which is our only source of information. The bank could, if it had been a fact, **have shown that it did pay** Doxen the money for the **mortgage, but it did not, and,** so far as the record discloses, it may just as well have taken the assignment as additional collateral **for some prior loan** of Doxen's as for a present cash payment. There is no evidence either way, and one inference is quite as reasonable as the other.

For (assuming for the moment that they had the right to make the defence) as soon as the appellees proved that the mortgage was a fraud, or that the consideration for it failed, even if the appellant did have the status of an innocent purchaser for value of negotiable paper, it was nevertheless incumbent upon it to establish by competent proof that it took the assignment as a holder in due course for value and before maturity. *Cover v. Myers,* 75 Md. 406. The mere fact that the assignment itself stated that it was for value

received was not sufficient to show that, because, while as between Doxen and the bank that phrase may have meant anything upon which they agreed as sufficient consideration for the assignment, such as the release or extension of a pre-existing debt, yet where the question is between Doxen's assignee and the grantee of the mortgagor and where, as in this case, Doxen's title to it was bad through fraud in its obtention, his assignee, before it could claim the status of an innocent purchaser for value, was bound to prove by some evidence, other than the recitals of the paper itself, that it paid actual value for it, and proof that it took it in satisfaction of or as collateral security for a pre-existing debt would not be sufficient for that purpose. 41 *C. J.* 668.

So that the case really turns upon these questions, first, Can the assignee enforce as against the original mortgagors a mortgage fraudulent in its inception and for which they received no consideration whatever? and, second, Can the appellees, as purchasers under a foreclosure sale of the mortgaged property, assert those defences?

The first question is definitely answered by *Hunter v. Chase,* 144 Md. 13; *Riley v. Woodall,* 145 Md. 125, and *Cumberland Coal and Iron Co. v. Parish,* 42 Md. 614, which establish the rule in this State that "the assignee takes the mortgage, and the debts secured by it upon the same terms and subject to like equities and defenses that it was subject to in the hands of the assignor," regardless of whether he gave value for it or not. 41 *C. J.* 690. And since we regard the evidence in the case as sufficient to show that the mortgage was fraudulent in its inception, and that no consideration for it moved to the mortgagors or their privies or agents, in our opinion the assignee could not enforce it against the original mortgagors.

The second question is more difficult. It has been said, although there is authority to the contrary, that the grantee of a mortgagor, where he has purchased subject to the mortgage, cannot rely upon its invalidity as a defence to a suit to foreclose it. 19 *R. C. L.* 369. And it has also been said

that the reason for that rule is that where the amount of the mortgage is deducted from the purchase price, it would be inequitable to allow the purchaser to retain that amount at the expense of the mortgagee. *Ibid.* But where there has been no assumption of the mortgage, and no deduction from the purchase price, ordinarily the grantee of the mortgagor may assert the same defence which the mortgagor himself could make. *Ibid.* And whether he can or cannot seems to turn upon the equities of his position rather than upon any lack of privity, because the general rule is that the purchaser of mortgaged property succeeds to the rights of the mortgagor. *Ann. Cas.* 1914A, note 185.

As we have stated, Doxen as attorney for the mortgagees, on April 20th, 1925, sold the mortgaged property to them for $882.20, "subject" to the mortgage to himself as an individual, which on April 16th, 1925, he had assigned to the appellant by an assignment not recorded until September 25th, 1925.

The contention of the appellant is that, if the sale had not been subject to the $1,400 mortgage, the mortgagees would have been obliged to pay $1,400 more for the property than they did, and that therefore they should be required in equity and good conscience to pay that sum to the holder thereof. But it is obviously absurd to say that the $1,400 was deducted from the purchase price, because in point of fact the "purchase price" was an arbitrary fictitious figure fixed by Doxen without any reference to the value of the property. There was no bid at all at the public foreclosure sale, but after the property had been offered at that sale Doxen withdrew it and reported a private sale of it to the mortgagees for $882.20. They say they made no such bid, but assuming that they are estopped from denying that they did, the bid only meant that they credited the mortgagors with that amount less the costs and expenses of the foreclosure, for they received no money, and the only practical effect of the foreclosure was to revest in them the title to the property they had sold to Mr. and Mrs. Joines. They were to receive from

that sale $8,700, but actually received nothing, for the Joineses paid nothing on the $4,700 mortgage, Doxen paid nothing on account of the $1,400 mortgage to anybody, and the $2,600 balance on the Ward mortgage was still due. Under such circumstances it is not likely that the appellees would have assumed the payment of the Doxen mortgage and have undertaken to pay $1,400 on account of it, when he owed them that amount, had they known that he did not own it at that time, but had fraudulently assigned it to a third party. But, on the contrary, at that time they believed that he had paid and satisfied the Ely mortgage for $1,000 and that the mortgage to him was a valid and subsisting lien.

Under such circumstances we can not agree with the proposition that the appellees are estopped from attacking the validity of the Doxen mortgage as against the appellant on the facts of this case. If Doxen had actually sold the mortgage for a present valuable consideration to the appellant, and it had taken it without notice of the fraud practised upon the appellees, there would be substantial merit in that contention, but the record discloses no such facts. On the contrary, it justifies the inference that the mortgage was conceived and executed as a fraudulent scheme to swindle the appellant out of the sum of $1,400, and Doxen, who perpetrated the fraud, certainly could not secure the aid of a court of equity to collect its proceeds from the victim thereof. That is to say, if Doxen had it, he could not enforce against the appellees the mortgage to him, and collect from them $1,400, when he had fraudulently appropriated to his own purposes that entire sum, which they should have received, but did not. 41 C. J. 756. And as upon the facts of this case the appellant stands in no better position than Doxen would have occupied, it follows that it likewise should be enjoined from enforcing the collection of that mortgage. For these reasons we concur in the decision of the trial court, and the decree appealed from will be affirmed.

*Decree affirmed, with costs.*