556 A.2d 694

**P/T LTD. II**

v.

**FRIENDLY MOBILE MANOR, INC.**

**No. 980, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 26, 1989.

John E. Griffith, Jr. (Linda L. Richardson and Piper & Marbury, on the brief), Baltimore, for appellant.

Jonathan A. Azrael (Azrael, Gann and Franz, on the brief), Towson, for appellee.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

BLOOM, Judge.

Appellant, P/T Ltd., II (P/T), which had purchased from appellee Friendly Mobile Manor, Inc. (Friendly) a mobile home or trailer park, together with a number of mobile homes situated on the premises, brought a declaratory judgment action in the Circuit Court for St. Mary's County against Friendly and two of its officers, appellees John S. Weiner and Kenneth C. Rossignol. P/T sought a declaration that it has no liability under certain outstanding retail installment contracts on the mobile homes included in the sale of the trailer park beyond the value of its interest in the collateral and that it has no liability for any other obligations secured by or related to those mobile homes.

Upon motion, the complaint was dismissed as to Weiner and Rossignol on the ground that the complaint sought no relief against them. They were not deemed to be necessary parties despite the fact that they had personally guaranteed some of the underlying debts on the mobile homes. Friendly filed an answer to P/T's complaint and a counterclaim seeking a declaratory judgment that neither it nor any of the financing banks would be liable to P/T for "site rent" with respect to the 22 mobile homes in question. After a non-jury trial, the court delivered its judgment orally and, pursuant to the court's direction, the clerk entered it on the docket on March 4, 1988, as follows:

> Decision of the Court that the Declaratory Judgment be entered decreeing that P/T Ltd., II has assumed liability on the Mobile Homes retail contract as stated in Agreement of Sale. The Counterclaim—Declaratory Judgment entered by Agreement and Stipulation of parties that P/T Ltd., II as the owner of the finance [sic] Mobile Homes is not entitled to Site Rent as against Friendly Mobile

Manor or Financial [sic] Banks. Judgment effective today.

In this appeal P/T asserts that the court erred in concluding that P/T assumed the retail installment indebtedness on the 22 financed mobile homes and that it had earlier erred in dismissing the complaint as to appellees Weiner and Rossignol.

## Facts

Friendly owned and operated a 12.3 acre mobile home trailer park, formerly known as "Friendly Manor," with its primary business the sale of mobile homes and the rental of mobile home sites to owners of mobile homes. On October 18, 1986, Friendly entered into an agreement of sale with Leonard S. Homa in which Mr. Homa purchased Friendly's real property together with 30 mobile home trailers located in the park. Several of those mobile homes were subject to liens, installment sales contracts, held by various financial institutions that had financed the original purchases of the homes. Friendly had assumed responsibility for payment of those liens when it acquired the homes from the original purchasers.[1] The agreement of sale was prepared by Mr. Homa and expressly provided in section 2(a)(iv):

> In addition, Purchaser shall also assume the retail installment contracts on those 25 mobile homes owned by Seller and located in Friendly Mobile Manor Park and being more fully described in Exhibit E.

---

1. Many park residents financed the purchase of their mobile homes under the Veterans' Administration guaranty program in which buyers entered into retail installment contracts with commercial lenders whereby the mobile homes were security for repayment of the loans. When some of these park residents left Friendly Manor, they sold their homes to Friendly, which kept the homes in the park and rented them. In selling their homes, the owners signed the titles in blank and delivered them to Friendly. Pursuant to the agreements between Friendly and the departing owners, Friendly took possession of the homes and assumed the owners' obligations under the retail installment contracts.

Although there was no document identified as Exhibit E attached to the contract, a list of 22 mobile homes was subsequently made and treated as if it were the document referred to in section 2(a)(iv). It is undisputed that section 2(a)(iv) required Mr. Homa to assume the indebtedness on the financed mobile homes.

On December 2, 1986, Mr. Homa assigned to P/T all his "right, title and interest" in his agreement of sale with Friendly. During the negotiations leading up to that assignment, P/T's founder, William T. Poole Jr., made it perfectly clear to Homa that under no circumstances would he (Poole) or the corporate assignee (P/T) assume any liability for the debts on the trailers beyond recourse of the lienholders to the trailers themselves. Homa's testimony at trial confirmed the assignee's position on that point, and there was no evidence to the contrary. At the settlement between Friendly and P/T, which was held the next day, Friendly presented a bill of sale for the 22 mobile homes, which provided:

P/T Ltd. II hereby agrees to assume the principal balance of the mobile home installment loan on the twenty-two (22) homes as designated above.

P/T refused to sign or accept the Bill of Sale with that debt assumption language, and after lengthy discussion a revised bill of sale executed by Friendly was tendered and accepted by P/T. It provided:

Friendly Mobile Manor, Inc. hereby conveys all of its right, title and interest in the thirty (30) above designated homes.... Friendly Mobile Manor, Inc. further certifies the accuracy of the principal balances contained on the foregoing page, and warrants that all payments are currently [sic] through December 1, 1986.

Although P/T adamantly refused to agree to accept liability for the underlying debts on the mobile homes, it did orally agree to remit monthly payments to the banks that had financed the original purchases of the mobile homes out of rents it collected from the tenants of those homes. In

the early months of 1987, the tenants occupying some of the financed mobile homes were evicted for non-payment of rent. Since it no longer received rent from the occupancy of those trailers, P/T failed to make the monthly installment payments due thereon. As a consequence, the holders of the security interests on eleven mobile homes foreclosed on them. Demand was made upon P/T and Friendly for deficiencies remaining after the foreclosure sales. P/T's reaction to those demands was the filing of this declaratory judgment action.

After answering P/T's complaint, Friendly filed a separate action against Homa and his law firm, alleging that Homa had been retained by Friendly to prepare appropriate documents in connection with the sale of the trailer park and to represent Friendly at settlement. Friendly asserted that Homa assured it at settlement that the assumption of installment contracts language (Section 2(a)(iv)) in the contract between Friendly and Homa that Homa assigned to P/T imposed upon the assignee the duty to pay the underlying debts in the trailers. Friendly contended that if P/T succeeded in its declaratory judgment suit, Homa and his law firm should be liable for malpractice under theories of breach of contract or negligence or for fraud. Friendly did not implead Homa in P/T's action against it, nor did it assert any claim against Homa based upon his assumption of the underlying debts on the trailers by virtue of Section 2(a)(iv) of the contract of sale.

## I

P/T contends that it did not become liable for Mr. Homa's contractual obligation to assume the underlying installment debts on the financed mobile homes by virtue of Homa's assignment to it of the contract between Homa and Friendly. It relies heavily on the undisputed fact that it had refused to execute the initial bill of sale which provided for such an assumption. P/T maintains that any liability relating to its purchase of the financed mobile homes is limited to the value of the mobile homes, namely, loss of its

ownership interest in the chattels through repossession, and that Homa and/or Friendly is responsible for any foreclosure deficiencies that might be claimed by the lending institutions that had financed the mobile homes. Friendly contends that although the initial bill of sale was modified to delete any debt assumption language, P/T nevertheless assumed the indebtedness because there was not a similar deletion of the debt assumption language provided in section 2(a)(iv) of the original contract.

In its oral opinion, the trial court found P/T liable for the retail loan installment indebtedness based upon the assumption language of section 2(a)(iv) of the agreement of sale between Homa and Friendly. The court was of the opinion that an assignment of rights under a contract automatically results in the assignment of the contractual obligations unless there is an express writing to the contrary. It stated:

> The court further finds that Mr. Poole [who dealt with Homa and founded P/T Ltd., II to acquire Homa's interest in the contract with Friendly] desired to be relieved of liability. Throughout the testimony the court finds that it was always talking about liability to the banks, to the lenders that he was interested in. Now, probably in his mind he wanted to be relieved of any liability to anyone whatsoever as to these retail installment contracts if they went sour, and if indeed the banks started looking to recover deficiencies.
>
> .    .    .    .    .
>
> Now, if, indeed, Mr. Poole had had independent advice it is this court's opinion and he said I do not want to be responsible whatsoever to anyone if these trailers, rent doesn't come in, and we can't make the payments and they get sold, and because the trailers depreciate because they are not like homes, that do appreciate, there is going to be a deficiency and I do not want to answer to anyone for that, and he would have, indeed, said so in writing in

that contract or totally excepted and excluded these mobile homes in the transaction. That was not done.

. . . . .

It is very clear when you take all of the rights and obligations under a contract, you concurrently assume all duty and responsibilities, unless you are relieved of them in writing.

. . . . .

Therefore, the court finds that P.T. is liable to the sellers as the term goes on those installment contracts as one of the terms of that original contract [the October 18, 1986, agreement of sale].

■ Contrary to the trial court's reasoning, under the common law there is no implied assumption by an assignee of his assignor's obligations under the original contract merely by virtue of the assignment. In the context of real property transactions, the Court of Appeals has held that an assignee must expressly assume any correlative duties with the rights assigned in order to be liable for such duties under the contract. *See Pumphrey v. Kehoe,* 261 Md. 496, 506, 276 A.2d 194 (1971); *East Vedado Corp. v. E.S. Adkins & Co.,* 157 Md. 416, 418–19, 146 A. 385 (1929). In the case *sub judice,* there was never an express writing or statement by P/T to assume Mr. Homa's obligations or the indebtedness of the financed mobile homes pursuant to section 2(a)(iv) of the contract of sale.

The rule is somewhat different with respect to assignments of contracts for the sale of goods. Friendly contends that the present sales contract falls under the Uniform Commercial Code, Md.Comm.Law Code Ann. (1975), § 2–210(4), which provides that an assignment of rights under a contract "is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise to perform those duties" absent the assignee's express negation of those duties.

For the U.C.C. to govern, however, the contract must be for the sale of "goods" as defined in CL § 2–105(1). Al-

though the sale of a mobile home has been determined to be a sale of "goods," *Lewis v. Hughes*, 276 Md. 247, 346 A.2d 231 (1975), the contract involved in this case was a "hybrid contract" for the sale of both real estate and goods. The type of hybrid contracts that the Court of Appeals and this Court have heretofore considered involved sales of both services and goods. As to such contracts we have generally followed the predominant purpose test adopted by a majority of jurisdictions: whether a hybrid contract is to be classified as a sale of services or as a sale of goods coming under the U.C.C. depends upon the predominant purpose of the contract. *See, e.g., Comptroller v. Equitable Trust Co.*, 296 Md. 459, 469, 464 A.2d 248 (1983); *Anthony Pools v. Sheehan*, 295 Md. 285, 293, 455 A.2d 434 (1983); *DeGroft v. Lancaster Silo Co.*, 72 Md.App. 154, 167, 527 A.2d 1316 (1987). Appellant contends that it is logical to apply the same test to hybrid contracts for the sale of both goods and realty. Here, the sale of the real estate represents $686,000 of the $774,000 purchase price. Under the predominant purpose test, the contract between Homa and Friendly that Homa assigned to appellant is clearly one for the sale of real estate, with the sale of goods, the mobile homes, being only incidental to the primary purpose of the contract. Under that test, therefore, the U.C.C. would be inapplicable and, by virtue of the holdings of *Pumphrey v. Kehoe, supra,* and *East Vedado Corp. v. E.S. Adkins & Co., supra,* P/T, as assignee, would not be responsible for the underlying debts its assignor had undertaken to pay because it had not expressly agreed to assume that obligation.

Appellees argue that we should apply a different test, the "gravamen" test advocated in 1 W. Hawkland, *Uniform Commercial Code Series* (1982), § 2–102:04, at Art. 2, p. 12, which the Court of Appeals used in *Anthony Pools v. Sheehan, supra.* That case involved personal injuries allegedly sustained as a result of a defect in a diving board sold and installed as part of a hybrid contract for the sale of goods and services, *i.e.,* labor and materials for the construction of a swimming pool. At issue was a warranty disclaimer that would be ineffective to negate the implied warranty of merchantability in the sale of consumer goods under the U.C.C. Although the predominant purpose of the

contract involved the sale of services rather than of goods, the Court held the disclaimer to be ineffective because the gravamen of the action was a defect in the goods, not the service. Relying on *Anthony Pools,* appellees would have us apply the U.C.C. rule in this case because this action involves that part of the contract dealing with the sale of the mobile homes, not the realty.

We need not decide whether the predominant purpose test or the gravamen test should be applied to this hybrid contract, because under either the common law rule or the U.C.C. rule we must reverse the declaratory judgment. By accepting an assignment of Homa's rights under the contract between Friendly and Homa, P/T did not become obligated to perform Homa's contractual duty to assume the installment contracts (and Friendly's indebtedness thereunder) on the trailers.

The court found, on the basis of undisputed testimony, that in negotiating with Homa for the assignment of Homa's contract rights to P/T, Mr. Poole, P/T's founder, made it perfectly clear that the assignee did not intend to assume any liability for the underlying installment sales debts on the trailers. The court was wrong in concluding that the only way the assignee could have avoided acquiring these debts along with the benefits of the contract would have been to negate in writing the assumption of those debts. That is not a requirement under the U.C.C., and, of course, it is directly contrary to the common law rule.

Since P/T unquestionably did not expressly assume any obligation for the debts on the trailers, pellucidly it could not be liable for those debts by virtue of the assignment under the common law rule. *Pumphrey v. Kehoe, supra; East Vedado Corp. v. E.S. Adkins & Co., supra.* We must look a little closer at the transaction to determine its status under the U.C.C.

The precise language of Md.Comm.Law Code Ann., § 2–210(4) is:

An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicates the contrary, it is a delegation of performance

of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties.

Throughout these proceedings, the parties apparently looked at the case as involving a question as to whether P/T's acceptance of Homa's assignment of all his "right, title, and interest" in the contract of sale obligated the assignee to assume the seller's (Friendly's) obligations. That may be what lead the court astray. The U.C.C., however, deals with the delegation to and assumption by the assignee of the assignor's duties. Homa, the assignor, had expressly obligated himself, by section 2(a)(iv) of the contract of sale, to pay Friendly's debts for the balance of the purchase prices of the trailers. Of course, if P/T had assumed Homa's obligation to pay Friendly's debts, Friendly would have been a third party beneficiary of that aspect of the assignment agreement between Homa and P/T, and could have opted to look either to the assignee or the assignor for performance of the assignor's contractual obligation. But when we determine what duties, if any, went with the assignment of Homa's contractual rights, we are concerned with that transaction between Homa and P/T, not the later transaction between vendor (Friendly) and assignee (P/T) at the settlement table. Therefore, it is of no significance, so far as the U.C.C. is concerned, that at settlement Friendly intended and believed (despite the deletion of the clause in the bill of sale expressly providing that P/T assumes the debts) that by virtue of the assignment P/T did acquire the trailer debts, whereas P/T intended and believed that it would not be responsible for those debts. What is of significance is that, in the dealings between Homa and Poole, both assignor and assignee understood quite well that Poole did not intend to assume responsibility for the trailer debts and that acceptance of the assignment would not constitute a promise by the assignee to pay those debts. The language and the circumstances unequivocably negated any intention to accept a delegation of the assignor's duties along with his rights.

We believe that the U.C.C. rule, like the common law rule, merely creates a presumption as to the intentions of the

parties to the assignment. *See* Restatement of Contracts § 64. *See also, McKinnie v. Milford,* Tex.Civil App., 597 S.W.2d 953 (1980).[2] Under the common law, by the great weight of authority, the assignee of rights, benefits, or privileges under a contract did not become responsible for the assignor's duties unless he expressly assumed performance of those duties. In other words, in the absence of an express manifestation of intention to accept the assignor's duties along with his rights and benefits, the assignee is presumed not to assume those duties, and they remain the obligation of the assignor. The U.C.C., however, provides that duties as well as rights pass under the assignment unless there are circumstances or language to the contrary. Thus, absent a clear manifestation of contrary intent, the assignee of a contract for the sale of goods takes the assignor's burdens along with his benefits because the law presumes that to be the intent of the parties.

There is, at least historically, a logical basis for the distinction. Originally, assignments of contracts were either not permitted or were frowned upon. When A contracts with B, he bargains for B's performance, not C's. But if the contract is one of performance of service by A in exchange for payment of money by B, it is of little consequence to B whether he pays the money to A or to C, provided he gets what he bargained for, A's performance.

---

2.  "The implied intention of the assignee, where the whole contract has been assigned, is set forth in Section 164 of the Restatement of Contracts, from which we quote:

    (1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties.

    (2) Acceptance by the assignee of such an assignment is interpreted in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties.

Thus, according to the Restatement, the courts may imply an assumption of the obligations of the contract from the acceptance of an assignment." 597 S.W.2d 957–58.

Correspondingly, so long as he is paid for his work, it little matters to A whether he performs the same duties for the benefit of B or C. Consequently, the law eventually came to accept the notion of assignment of benefits while still rejecting the proposition that one could assign his duties, *i.e.*, foist off on the promisee someone else's work, craftsmanship, reliability, skill, etc., in place of his own. Most contracts for sales of goods, however, involve obligations that can be performed by C just as well as A or B. Unless the goods are unique, they may be supplied by C as well as B; unless A is relying on B's credit, payment by C should be just as satisfactory as payment by B. And if the contract is of such a peculiar nature that substitution of C for B would be prejudicial to A, A may by appropriate contract provision prevent the assignment of either benefits or duties. For example, if the sale is on credit, A may object to B's assignment to C of the duty to pay. Or, if A's obligation is to supply all the goods of a certain type that B needs, A may be very reluctant indeed to permit C, whose needs may be totally different, to be substituted for B. But, here again, the U.C.C. establishes rules to apply in the absence of a manifestation of a contrary intent. Subsections (2) and (3) of § 2–210 provide, in pertinent part:

(2) Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance.

(3) Unless the circumstances indicate the contrary a prohibition of assignment of the "contract" is to be construed as barring only the delegation to the assignee of the assignor's performance.

■ We conclude that where, as here, the assignee of a contract, whether it be for the sale of goods, services, or realty, makes it known to the assignor that he does not intend by accepting the assignment to assume the assignor's duties and obligations under that contract, those duties and obligations are not delegated and the assignee makes no implied promise to perform them. Thus, if Friendly had looked to Homa to perform his contractual duty to "assume

the retail installment contracts" on the trailers,[3] Homa would have no right to pass that obligation on to P/T, even under the U.C.C. rule, because the delegation of the assignor's duties had been negated in the dealings between Homa and Poole. Friendly, which was not a party to the assignment, can have no greater rights against the assignee than the assignor has.

■ We hold, therefore, that the trial court erred in declaring that "P/T has assumed a liability on the mobile homes retail contract as stated in Agreement of Sale."

Since the declaratory judgment was entered upon motion at the conclusion of P/T's case, Friendly contends that a decision by us that the judgment is erroneous would require that we reverse and remand for a new trial, to give Friendly an opportunity to put on a defense. Under the particular circumstances of this case, however, we see no reason for a new trial. If, as we pointed out, *supra*, we were to apply the common law rule, the presumption that the assignee did not assume the assignor's obligation would require a ruling in P/T's favor as a matter of law. On the other hand, if we were to apply the U.C.C. rule, whether the assignee has rebutted the presumption that it did assume the assignor's duty is a factual matter dependent entirely on the dealings between Homa and Poole that culminated with the assignment of Homa's contract to P/T. Both Homa and Poole testified as to their dealings and understandings, and both were subject to cross-examination by Friendly in order to explore fully what occurred between them. The uncontradicted testimony of the two parties to the assignment unequivocally established that, as between them, Poole made it abundantly clear that he, *i.e.*, P/T, had no intention of assuming the assignor's contractual duty to pay the trailer debts. There is simply no logical reason to give appellee another opportunity to relitigate an issue of fact that has already been fully litigated. Accordingly, we shall reverse the judgment and direct the circuit court to declare that P/T has not assumed any liability for payment of the underlying debts on the trailer.

---

**3.** Since Homa was not made a party to this action, we express no opinion as to whether Friendly, at this stage, can require Homa to perform his contractual duties that were not delegated to P/T.

## II

P/T sought to include Friendly's corporate officers as defendants in the declaratory judgment action because the officers were guarantors of certain loans on the mobile homes. The trial court granted those officers' motion to dismiss, and P/T contends that the court erred in doing so because the officers constitute necessary parties pursuant to § 3–405(a)(1) of the Uniform Declaratory Judgment Act and therefore should be included in any declaratory relief.

In light of our holding regarding P/T's non-liability for those loans, P/T no longer has any interest in or basis for pursuing any claim for relief, declaratory or otherwise, against appellees Weiner and Rossignol. Therefore, we need not address this issue.

JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE FRIENDLY MOBILE MANOR, INC.