61 A.3d 829

**Marshall THOMPKINS, et ux.**

v.

**MORTGAGE LENDERS NETWORK USA, INC., et al.**

No. 98, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Feb. 28, 2013.

686

E. David Hoskins, Baltimore, MD, for appellant.

William P. Baker (Baker & Baker, PA, on the brief) Baltimore, MD, for appellee.

Panel: KEHOE, WATTS, ARRIE W. DAVIS (Retired, Specially Assigned) JJ.

KEHOE, J.

Appellants, Marshall T. Thompkins and his wife, Antoinette S. Thompkins (the "Thompkinses"), appeal from a decision of the Circuit Court for Baltimore City granting summary judgment in favor of appellee Mountaineer Investments, LLC ("Mountaineer"). In their complaint, the Thompkinses contended that Mountaineer was liable for certain alleged viola-

tions of the Maryland Secondary Mortgage Loan Law (the "SMLL"), found at MD.CODE ANN., COM. LAW ("CL") §§ 12–401 *et seq.* (1975, 2005 Repl.Vol., 2010 Supp.). In granting summary judgment, the circuit court determined that Mountaineer was an assignee and not a lender under the SMLL, and that there was no statutory or common law basis to hold Mountaineer derivatively liable for any of the lender's alleged violations. The Thompkinses subsequently filed this appeal, presenting two questions for our review, which we have reworded and consolidated:

Is an assignee of a second mortgage loan liable for the lender's violations of the SMLL? [1]

We conclude that an assignee of a second mortgage is not liable for the lender's violations of the SMLL when the loan has been paid in full unless the assignee (i) expressly assumed such liability or (ii) itself violated the SMLL.[2] Because the Thompkinses paid their loan prior to filing suit and no facts have been pled suggesting that Mountaineer either expressly assumed any liability for the lender's alleged violations or violated the SMLL itself, we will affirm the circuit court's grant of summary judgment in favor of Mountaineer.

### FACTUAL AND PROCEDURAL BACKGROUND

#### *The Undisputed Facts*

On March 4, 1998, the Thompkinses obtained a second mortgage loan in the principal amount of $60,075 from Mort-

---

1. The Thompkinses frame the issues as follows:
 1. Is an assignee of a second mortgage subject to the SMLL claims that could be raised by the borrower against the originating lender by operation of Md.Code Ann., Com. Law § 3–306, which provides that a person taking an instrument, other than a person having the rights of a holder-in-due-course, is subject to a claim of a possessory or property right in the instrument or its proceeds?
 2. Is an assignee of a second mortgage subject to the SMLL claims that could be raised by the borrower against the originating lender by operation of Maryland common law?

2. We are not presented with the question of whether such claims can be asserted as a defense in an action by an assignee to enforce the loan instrument.

gage Lenders Network USA, Inc. ("MLN"). There is no dispute that this loan is subject to the provisions of the SMLL and that MLN was a "lender" as the term is defined in the SMLL.[3]

At closing, the Thompkinses paid certain additional fees, including a \$250 document preparation fee, a \$225 settlement or closing fee, a \$151.25 title insurance premium, and a \$1,000 mortgage broker's or finder's fee.

On the day of closing, MLN transferred the loan to Master Financial, Inc. ("Master Financial"). In early December of 2005, Master Financial transferred the loan to Mountaineer as part of a larger pool of small loans. There is no dispute that Mountaineer is an assignee of the Thompkinses' loan. It is additionally undisputed that Mountaineer has never been in the business of making loans and has never been licensed in Maryland to do so. Thus, Mountaineer is not a "lender" as defined by CL § 12–401(b). As noted by the circuit court, it is additionally undisputed that Mountaineer "did not receive or charge any consideration, fees or commissions in connection with the Plaintiffs' second mortgage."

On June 26, 2006, approximately seven months after the note was assigned to Mountaineer, the Thompkinses paid the loan in full. Mountaineer released the Deed of Trust shortly thereafter.

### The Complaint & Amended Complaint

The Thompkinses originally filed their complaint in the Circuit Court for Baltimore City on July 7, 2009, naming MLN and Mountaineer as defendants.[4] On August 11, 2009, Mountaineer removed the action to the United States District Court

---

**3.** CL § 12–401(b) defines a lender as "a licensee" or "a person who makes a secondary mortgage loan but is exempt expressly from the licensing requirements of the Maryland Mortgage Lender Law." CL § 12–401(c) defines a licensee as "a person who is licensed under the Maryland Mortgage Lender Law."

**4.** The Thompkinses voluntarily dismissed all claims pending against MLN prior to this appeal.

for the District of Maryland. Subsequently, on April 2, 2010, the District Court for the District of Maryland remanded the matter back to the Circuit Court for Baltimore City without addressing the merits of the Thompkinses' contentions.

The Thompkinses alleged in their complaint and amended complaint [5] that MLN violated the statutory requirements of the SMLL in three distinct ways. First, referencing the closing fees identified above, the Thompkinses asserted, in essence, that MLN charged fees in addition to a loan origination fee, and that the charging of such additional fees was in violation of the SMLL. *See* CL § 12–411 ("A lender may not directly or indirectly, contract for, charge, or receive, any interest, discount, fee, fine, commission, brokerage, charge, or other consideration in excess of that permitted by this subtitle."); CL § 12–405(a)(3). [6] Second, the Thompkinses alleged that MLN failed to provide the proper disclosure form as required by the SMLL. *See* CL § 12–407.1 ("The Commissioner shall develop and prepare a form that each lender shall furnish to an applicant for a secondary mortgage loan. The form shall state the following: (1) The purpose for which the loan is to be used; (2) A disclosure that, if the loan is for a commercial purpose, the borrower shall forfeit certain

---

**5.** As is relevant to this appeal, the complaint and amended complaint differ primarily in the amount of damages requested.

**6.** Section 12–405 provides, in pertinent part (emphasis added):

 (a) *Origination fee.—*
 (1) A lender may collect a *loan origination fee* for making a loan under this subtitle only as provided in this section.
 (2) The *aggregate amount of the loan origination fee* imposed by a lender under this section when combined with any finder's fee imposed by a mortgage broker under § 12–804 of this title may not exceed the greater of:
 (i) $ 500 or 10 percent of the net proceeds of a commercial loan of $ 75,000 or less made under this subtitle; or
 (ii) $ 250 or *10 percent of the net proceeds* of any other loan made under this subtitle.
 (3) A lender may not collect from the borrower any other commission, finder's fee, or point for obtaining, procuring, or placing a loan under this subtitle.

rights.").[7] Third, the Thompkinses claimed that they were improperly charged a broker's or finder's fee (without having first entered into a separate and distinct written agreement with the mortgage broker) in violation of the SMLL. *See* CL § 12–805(d)(1) ("A finder's fee may not be charged unless it is pursuant to a written agreement between the mortgage broker and the borrower which is separate and distinct from any other document."); CL § 12–406(b) ("An agreement to pay a commission, finder's fee, or point may not be enforced unless it is in writing and signed by the lender."); CL § 12–405(a)(3).

The amended complaint did not allege that Mountaineer acted as a secondary mortgage lender but rather that Mountaineer "had a duty to make sure that the second mortgage loans it purchased complied with the SMLL[]," and that Mountaineer "breached this duty and routinely purchased Maryland second mortgage loans that violated the SMLL, thus perpetrating the market for such illegal secondary mortgage loans." Therefore, the amended complaint asserts:

> As purchaser and/or assignee and holder of the note and the second mortgage of the Plaintiffs, Mountaineer . . . is liable to the Plaintiffs because it is subject to all claims and defenses which the Plaintiffs . . . could asserted against [MLN].

Additionally, the amended complaint alleged that Mountaineer "knowingly violated the provisions of the Maryland SMLL because it had actual knowledge . . . of the requirements of the SMLL and that thousands of Maryland second mortgage loans were made in violation of the statute" and, further, that, "[n]otwithstanding this knowledge, [Mountaineer] continued to

---

7. In *Polek v. J.P. Morgan Chase Bank,* 424 Md. 333, 36 A.3d 399 (2012), the Court of Appeals held, in relevant part, that: 1) "a mortgage lender may itemize the fees it charges that relate to loan origination, so long as the aggregate total of the fees related to loan origination does not exceed the 10% statutory cap in § 12–405" and 2) "§ 12–407.1 requires a disclosure only for borrowers disclosing that they will use the proceeds from the secondary mortgage loan for commercial purposes." 424 Md. at 350, 36 A.3d 399. *Polek* was filed after judgment was entered in the instant case and the circuit court did not address the merits of the Thompkinses' claims in granting summary judgment.

collect interest on the Plaintiffs' second mortgage loan that they were not legally entitled to collect." The Thompkinses prayed for statutory damages totaling $264,415.54, plus fees, costs, and prejudgment interest.

## The Circuit Court Proceedings

Prior to the completion of discovery, the Thompkinses moved for summary judgment on all violations alleged in the complaint, and argued that Mountaineer, as assignee, was liable for MLN's violations. The Thompkinses contended that CL § 3–306 provided a statutory basis for imposing liability upon Mountaineer. Specifically, the Thompkinses interpreted CL § 3–306 to impose derivative liability when an assignee could not establish a holder-in-due-course defense. The Thompkinses also argued that Mountaineer was liable for the alleged violations under Maryland common law.

In response, and in a companion motion to dismiss, Mountaineer argued that the SMLL applied only to lenders, not assignees, that neither CL § 3–306 nor the common law provided a basis to impose derivative liability upon an assignee, and that Mountaineer, as assignee, had not assumed liability for any of MLN's alleged violations. Mountaineer also maintained that it was a holder-in-due course, and additionally argued that MLN had not violated any requirements of the SMLL.[8] These motions were denied.

After the completion of discovery, Mountaineer moved for summary judgment on all claims contained in the Thompkinses' amended complaint, maintaining that there were no genuine disputes as to any material facts, and arguing, once again, in relevant part, that there was no basis in Maryland law for imposing derivative liability on Mountaineer for any of MLN's alleged violations.

---

**8.** Mountaineer also contended—and argues to us—that the Thompkinses' action was not brought within the applicable statute of limitations. However, in light of our below holding that otherwise disposes of the relevant questions on appeal, we see no reason to address this issue further.

In response, the Thompkinses asserted that MLN had violated the SMLL, and that Mountaineer could be derivatively liable for these violations under the common law and pursuant to CL § 3–306 (if it was not a holder-in-due-course). The Thompkinses also contended that there remained outstanding material factual disputes, including a dispute as to whether Mountaineer was, in fact, a holder-in-due-course.

After a hearing, the circuit court granted summary judgment in favor of Mountaineer, concluding that Mountaineer was an assignee of the Thompkinses' loan and that there was no statutory or common law basis to impose derivative liability on Mountaineer for any of the alleged violations, irrespective of whether Mountaineer was a holder-in-due-course. Specifically, in its memorandum opinion, the circuit court stated, in relevant part, as follows (citations omitted):

> No provisions of the SMLL define, address or account for claims against assignees of second mortgage loans. The SMLL does not apply to Mountaineer as an assignee of Plaintiffs' loan in 2005. The SMLL does not apply to Plaintiffs' claims against Mountaineer as a "lender" or assignee. Nor did Mountaineer expressly or impliedly assume any liability as an assignee of Plaintiffs' loan in 2005.
>
> Accordingly, for reasons stated, this Court shall enter judgment in favor of Mountaineer because the Defendant's motion and Plaintiffs' response show that there is no genuine dispute as to any material fact and Mountaineer is entitled to judgment as a matter of law.

This appeal followed.

## DISCUSSION

An appellate court reviews a circuit court's grant of summary judgment *de novo*. *Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 82, 923 A.2d 1 (2007). The court must determine whether there exists a dispute as to any material fact and whether the circuit court was legally correct. *Lombardi v. Montgomery County,* 108 Md.App. 695, 710, 673 A.2d 762 (1996). In making this determination, the court must

consider the facts in the record " 'in the light most favorable to the non-moving part[y].' " *Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 74, 904 A.2d 511 (2006) (quoting *Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 533–34, 836 A.2d 655 (2003)). "Even if it appears that the relevant facts are undisputed, if those facts are susceptible to inferences supporting the position of the party opposing summary judgment, then a grant of summary judgment is improper." *Id.*

Both the Thompkinses and Mountaineer start with the same assumption, namely, that the SMLL itself does not address whether an assignee of a second mortgage note can be held liable for a lender's violations of the law. We agree.[9] The parties also agree that Title 3 of the Uniform Commercial Code, codified at MD.CODE ANN., COM. LAW ("CL") §§ 3–301 *et seq.* (1975, 2002 Repl.Vol., 2010 Supp.), applies to the facts of our case. They disagree, however, as to which provisions of Title 3 control. The relevant sections are CL § 3–305, which sets out defenses and claims in recoupment that can be asserted by an obligor against a person attempting to enforce a negotiable instrument, and CL § 3–306, which provides that a non-holder-in-due-course takes an instrument subject to claims of third parties to it.

Mountaineer takes the position that, while CL § 3–305 may provide a remedy to a borrower in a secondary mortgage loan under some circumstances, the Thompkinses' claims fail on the facts at hand. The Thompkinses maintain that § 3–306 authorizes the imposition of derivative liability upon an assignee of a second mortgage loan note that cannot establish a holder-in-due-course defense. Additionally, the Thompkinses allege

---

9. CL § 12–413 provides (emphasis added):
 **§ 12–413 Civil penalties.**
 Except for a bona fide error of computation, if a *lender* violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a *lender* who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

that Maryland common law provides a separate basis for the imposition of derivative liability on Mountaineer.

In order to determine whether Mountaineer is liable for MLN's alleged violations of the SMLL, we will first consider whether CL § 3–306 provides a basis to impose liability on an assignee unable to establish a holder-in-due-course defense. On this point, we conclude that CL § 3–306 does not apply to the facts of this case, and that, therefore, the statute does not provide a basis for the imposition of derivative liability on Mountaineer for any of MLN's alleged violations. We will then turn to whether CL § 3–305 is applicable here. We conclude that § 3–305 is also inapposite. Finally, we will decide whether Maryland case law otherwise provides a basis for the imposition of liability on an assignee for a lender's alleged violations. Because we conclude that case law provides no such basis, we will affirm the circuit court's grant of summary judgment in favor of Mountaineer.

█ In weighing the parties' contentions, we remain cognizant of the legislative purposes of the SMLL. As noted by this Court in *Duckworth v. Bernstein*, 55 Md.App. 710, 724, 466 A.2d 517 (1983), the SMLL "is a law intended to guard the foolish or unsophisticated borrower, who may be under severe financial pressure, from his own improvidence. The law achieves this beneficent purpose by penalizing even the unwitting violator, to the extent of limiting him to recovery of the principal amount of the loan. This is consistent with the strong Maryland policy against usury ... [and] also consistent with the legislative approach to consumer protection...." *Id.* at 724, 466 A.2d 517 (citations omitted).

## I. Commercial Law Article § 3–306

█ The Thompkinses contend that CL § 3–306 provides for derivative liability in the event that an assignee is not a holder-in-due-course. This presents an issue of statutory interpretation—specifically, we must determine whether the statute is intended to address claims of the sort asserted by the Thompkinses. In so doing, we must apply "the same

principles of statutory construction that we would apply in determining the meaning of any other legislative enactment." *Messing v. Bank of America,* 373 Md. 672, 684, 821 A.2d 22 (2003). To do this, we start with an examination of the text of the statute. As Judge Zarnoch recently explained for this Court, questions of statutory interpretation are often:

> resolvable on the basis of judicial consideration of three general factors: 1) text; 2) purpose; and 3) consequences. Text is the plain language of the relevant provision, typically given its ordinary meaning, *Breslin v. Powell,* 421 Md. 266, 286 [26 A.3d 878] (2011), viewed in context, *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514 [525 A.2d 628] (1987), considered in light of the whole statute, *In re Stephen K.,* 289 Md. 294, 298 [424 A.2d 153] (1981), and generally evaluated for ambiguity. *Kaczorowski,* 309 Md. at 513 [525 A.2d 628]. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. *Kaczorowski,* 309 Md. at 515 [525 A.2d 628]. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, *Christian v. State,* 62 Md.App. 296, 303 [489 A.2d 64] (1985), or as a principle of avoidance of an absurd or unreasonable reading, *Kaczorowski,* 309 Md. at 513, 516 [525 A.2d 628], grounds the court's interpretation in reality.

*Town of Oxford v. Koste,* 204 Md.App. 578, 585–86, 42 A.3d 637 (2012).

■ We have a particularly helpful and accessible guide in our search for legislative intent. "Unlike most state statutory enactments, the U.C.C. is accompanied by a useful aid for determining the purpose of its provisions—the official comments of the Code's draftsmen. While these comments are not controlling authority and may not be used to vary the plain language of the statute, they are an excellent place to begin a search for the legislature's intent when it adopted the Code." *Messing,* 373 Md. at 685, 821 A.2d 22.

Thus, we start our examination with the text of CL § 3–306. That section states, in its entirety (emphasis added):

A person taking an instrument, other than a person having rights of a holder in due course, *is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds.* A person having rights of a holder in due course takes free of the claim to the instrument.

The Official Comment to CL § 3–306 reads in its entirety as follows (emphasis added):

This section expands on the reference to "claims to" the instrument mentioned in former Sections 3–305 and 3–306. *Claims covered by the section include not only claims to ownership but also any other claim of a property or possessory right.* It includes the claim to a lien or the claim of a person in rightful possession of an instrument who was wrongfully deprived of possession. Also included is a claim based on Section 3–202(b) for rescission of a negotiation of the instrument by the claimant. *Claims to an instrument under 3–306 are different from claims in recoupment referred to in Section 3–305(a)(3).*

Applying the above recited rules of statutory construction, it is clear to this Court that the text of § 3–306, on its face, applies to circumstances where someone makes a claim on the loan instrument or its proceeds against a person other than a holder in due course. The two examples provided in CL § 3–306's Official Comment—a claim to rescind a negotiation and a claim to recover the instrument or its proceeds—clearly fit within this interpretation. Additionally, the Official Comment relates that lien claims and wrongful deprivation claims also fall within the scope of the statute. All of these examples are clearly claims of a property or possessory right in the loan instrument or its proceeds.

In this regard, the Court of Appeals' analysis in *Master Financial v. Crowder*, 409 Md. 51, 64, 972 A.2d 864 (2009), is instructive. The issue before the Court in *Crowder* was

whether an action to recover for violations of the SMLL was subject to the three year statute of limitations set out in MD.CODE ANN., CTS. & JUD. PROC. ("CJP") § 5–101 (1973, 2006 Repl.Vol.) or the 12 year limitation period for "specialities" specified in CJP § 5–102. As the Court explained, among the actions subject to the latter statute are those on a " 'promissory note or other instrument under seal.' " *Id.* at 63 n. 3, 972 A.2d 864 (quoting CJP § 5–102(a)(1)). In concluding that CJP § 5–102(a)(1) did not apply to an action for damages for a breach of the SMLL, the Court stated:

> The governing fact here, as both lower courts observed, is that these actions are not on the notes or deeds of trust. The plaintiffs are not seeking to enforce those instruments, or to invalidate or reform them based on any alleged imperfection in the instruments themselves. The sole bases of their complaint under the SMLL are that (1) the lender was not properly licensed, (2) they were charged excessive origination fees, and (3) they were not given a disclosure form supposedly required by the statute, and the only remedies sought were those provided by CL § 12–413.[10] Those alleged facts and the consequences of them are entirely extraneous to the notes and deeds of trust.

 Like the plaintiffs in *Crowder*, the Thompkinses have not made a claim on the loan instrument or its proceeds. Instead, they seek statutory damages as a result of alleged violations of the SMLL. The basis for their claim is CL § 12–413. Their claims do not involve questions of who has the right to possess a note or to receive the note's proceeds, which is the purview of § 3–306. CL § 3–306 is, therefore, inapplicable to the specific facts of this case.

---

**10.** CL § 12–413 states in pertinent part that "if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interests, costs, or other charges with respect to the loan," and that "a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law."

## II. Commercial Law Article § 3–305

Mountaineer contends that the Thompkinses' claims are claims in recoupment and that CL § 3–305 is the statute that applies here. Section 3–305 states, in relevant part (emphasis added):

(a) Except as stated in subsection (b), *the right to enforce the obligation of a party to pay an instrument* is subject to the following:

* * *

(3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is ... not subject to claims in recoupment stated in subsection (a)(3) against a person other than the holder.

By its plain meaning, CL § 3–305(a) applies only to actions to enforce the obligation of a party to pay an instrument. The Official Comment to CL § 3–305 supports this conclusion.[11] In the instant case, the loan had been paid in full three years before suit was filed. Mountaineer is not seeking to enforce the instrument, and it would make no sense to bring an action to collect a debt that had been paid in full. Such an action has not been brought, and it thus follows that, like CL 3–306, CL § 3–305 is inapplicable to these facts.

---

**11.** For example, the Comment explains that, "Subsection (a) states the defenses to the *obligation of a party to pay the instrument.*" (Emphasis added). The Comment further explains that, with a claim in recoupment for breach of warranty, "If Buyer had already partially paid the note, Buyer is not entitled to recover the amounts paid. The claim can be used only as an offset to amounts owing on the note."

## III. Maryland Case Law

The Thompkinses also contend that several decisions by the Court of Appeals provide a separate basis for holding an assignee derivatively liable for the lender's violations of SMLL. In support of this position, the Thompkinses cite to a series of Maryland cases involving assignments: *James v. Goldberg*, 256 Md. 520, 527, 261 A.2d 753 (1970); *Farmers' & Merchants' Nat'l Bank of Bel Air v. Anderson*, 152 Md. 641, 645, 137 A. 367 (1927); *Whistler v. Hanna*, 152 Md. 597, 601–02, 137 A. 276 (1927); *Riley v. Woodall*, 145 Md. 125, 127, 125 A. 503 (1924); *Hunter v. Chase*, 144 Md. 13, 16–17, 123 A. 393 (1923); *Ressmeyer v. Norwood*, 117 Md. 320, 331–33, 83 A. 347 (1912); *Cumberland Coal & Iron Co. v. Parish*, 42 Md. 598, 614 (1875).

These cases are not on point factually, nor are they helpful to our determination of whether an assignee can be held liable for violations of the SMLL by the original lender. Although the cases differ factually and the Court's analysis varied to some extent in each,[12] these decisions (with the exception of *Goldberg* ) all address an assignee's right to enforce a mortgage instrument where there were allegations that the instrument was obtained through fraudulent, deceitful, or other improper means. Here, in contrast, we are not concerned with Mountaineer's rights under the Note nor is fraud in the

---

**12.** For example, the results in *Cumberland Coal* and *Whistler* turn on the application of a common law rule that required both parties to a contract to consent to its assignment. *See* 42 Md. at 614, 152 Md. at 601–02, 137 A. 276. The issue in *Ressmeyer v. Norwood* was whether a mortgage executed by a husband to his wife in return for her guaranteeing payment of certain creditors of the husband, was enforceable against other creditors. 117 Md. at 331–33, 83 A. 347. *Farmers' & Merchants' Nat'l Bank of Bel Air v. Anderson* addressed an attempt by an assignee of a mortgage instrument to enforce the instrument against a mortgagor where the mortgagor claimed that the instrument was fraudulent in its inception. 152 Md. at 645, 137 A. 367. *James v. Goldberg* dealt with the assignment of a lease, where the assignor tenant failed to obtain written consent from the landlord for the assignment. 256 Md. at 520, 261 A.2d 753. The issue in *Goldberg* was whether the assignee could enforce the terms of the lease against the landlord, *id.*, not, as here, whether the assignee of an instrument is derivatively liable for the original lender's regulatory violations.

inducement an element of the Thompkinses' claim. *Goldberg* and the *Cumberland Coal* line of cases do not convince us that the remedy sought by the Thompkinses exists under the common law of Maryland.

In support of their position, the Thompkinses also cite *Miller v. Pac. Shore Funding,* 224 F.Supp.2d 977 (D.Md.2002). We do not find *Miller* persuasive in this regard. *Miller* involved claims based on asserted violations of the SMLL by lenders. In addition, as in this case, the plaintiffs in *Miller* asserted claims against the assignees of the notes signed by the plaintiffs in those transactions. In concluding that the allegations in the plaintiffs' complaint survived a motion to dismiss for failure to state a claim upon which relief can be granted, the District Court stated:

> MBNA and Household are alleged assignees of Mr. Gilbert–Iheme's loan; Residential is an alleged assignee of the Millers' loan. As assignees, these defendants stand in the shoes of their assignor, Pacific; they are subject to the same claims or defenses as Pacific, unless they can raise a holder-in-due-course defense. *See Jones v. Hyatt,* 356 Md. 639, 653 n. 8, 741 A.2d 1099 (1999). Thus, whatever claims Mr. Gilbert–Iheme may assert against Pacific, he may assert against MBNA and Household. Likewise, whatever claims the Millers may assert against Pacific, they may assert against Residential.

224 F.Supp.2d at 996.

We do not read *Jones v. Hyatt* as broadly as did the District Court. In that case, Jones was injured in an automobile accident. The negligent driver was operating a vehicle leased by K & D Auto, Inc. K & D had arranged for insurance on the vehicle through Hyatt, an insurance agency, but, allegedly through negligence attributable to Hyatt, no policy was obtained. Thus the vehicle was not insured, a fact of which K & D was unaware until three weeks after the accident. 356 Md. at 642–43, 741 A.2d 1099. Jones then sued the driver and K & D for negligence and, eventually, obtained a judgment against K & D. On that same day, K & D assigned to Jones its cause

of action against Hyatt for the agency's failure to obtain the policy. Shortly thereafter, but more than four years after the accident occurred, Jones and his spouse filed suit against Hyatt in which they eventually asserted claims that Jones was a third-party beneficiary of the agreement between K & D and Hyatt to obtain insurance and that Hyatt was liable to Jones in negligence for its failure to provide a policy. *Id.* at 644, 741 A.2d 1099. The Joneses prevailed in the circuit court but this Court reversed the judgment on the basis that the statute of limitations on the Joneses' third-party beneficiary claim expired before the action was brought. *Id.* at 646, 741 A.2d 1099. The Joneses filed a petition for certiorari and Hyatt a cross-petition. The Court granted both. Of the various issues presented to it, the Court addressed only two: first, it held that the statute of limitations for breach of a contract to supply insurance begins to run when the plaintiff learns that no insurance has been secured, *id.* at 651, 741 A.2d 1099, and second, that Hyatt owed no tort duty directly to the Joneses. *Id.* at 653, 741 A.2d 1099. We now turn to the portion of the opinion relied upon by the *Miller v. Pac. Shore Funding* Court.

In a footnote—which was cited by the District Court as its authority for the proposition that the assignee of a note was liable for the assignor's violations of the SMLL—the Court of Appeals discussed, *in dicta,* the Joneses' claim against Hyatt based on Jones' status as an assignee of Hyatt's negligence action against the agency. *Id.* at 653 n. 8, 741 A.2d 1099. We set out the footnote in full (emphasis in original):

> In their certiorari petition, the Joneses did not raise the issue of when the statute of limitations began to run on their cause of action *as assignees* of K & D. As the trial court correctly held, however, any negligence action, which K & D might have had, accrued when K & D first sustained harm as a result of Hyatt's alleged breach of tort duty, i.e., when K & D learned that, because it had no insurance coverage, it had to pay for the property damage to its own vehicle, reimburse Allstate for the damage to Mr. Jones's car, and defend itself against the Joneses' personal injury causes of

action. As assignees, the Joneses were bound to the same limitations period as their assignor, K & D. *See, e.g., James v. Goldberg,* 256 Md. 520, 527 [261 A.2d 753] (1970) (an assignment "does not confer upon the assignee any greater right than the right possessed by the assignor"); *Webb v. Balto. Commercial Bank,* 181 Md. 572, 580 [31 A.2d 174] (1943) (an assignee is "subject to all defenses against [the assignor's] claim, for obviously, the rights of the assignee are no greater than those of his assignor * * * the statute of limitations ... applied").

The Court's analysis in this passage is limited to whether an assignee is bound by defenses that could be asserted against the assignor when the assignee attempts to enforce or collect upon the chose in action that was assigned. The Court answered the question affirmatively. Consistent with this principle, when the chose assigned is a promissory note, CL § 3–306 makes it clear that an assignee is also subject to an action for rescission. However, as the Court of Appeals explained in *Crowder,* 409 Md. at 64, 972 A.2d 864, an action seeking damages for violations of the SMLL is not an attempt to enforce or rescind a note. *Hyatt* does not support the notion that an assignee is liable for violations of the SMLL committed by the lender and, as we explained *supra,* the law in Maryland is clearly to the contrary.

In granting summary judgment, the circuit court also relied upon *P/T Ltd. v. Friendly Mobile Manor,* 79 Md.App. 227, 556 A.2d 694 (1989). In *P/T Ltd.,* the assignee accepted assignment of a contract involving the purchase and sale of a mobile home park and certain mobile home units. 79 Md.App. at 229, 556 A.2d 694. In so doing, the assignee made it clear that he would assume no liability for certain outstanding debts owed by the assignor, and, in fact, refused to accept the bill of sale with such a provision included. *Id.* at 231–32, 556 A.2d 694. After surveying relevant Maryland law and scholarly authority, this Court explained that "an assignee must expressly assume any correlative duties with the rights assigned in order to be liable for such duties under the

contract." [13] *Id.* at 234, 556 A.2d 694. *See Pumphrey v. Kehoe,* 261 Md. 496, 506, 276 A.2d 194 (1971) (stating that "our predecessors have held that it is required that the assignee must *expressly assume* these duties, there being no implication of assumption by the mere assignment" (emphasis in original)); *East Vedado Corp. v. E.S. Adkins & Co.,* 157 Md. 416, 418–19, 146 A. 385 (1929) ("The authorities hold, 'that liability of this kind can result only from some express or implied contract of the assignee, and that it will not be implied from the mere assignment of the original contract even though followed by possession of the land.' "(citations omitted)). Applying the above standard, this Court determined that the assignee did not assume the assignor's obligations under the contract merely by reason of the contract's assignment, especially in light of the assignee's express refusal to accept said obligations.[14]

 The Thompkinses assert that the facts in *P/T Ltd.* are distinguishable from the facts in the present case. They are correct but the factual distinctions are immaterial to our analysis. In reaching our decision in *P/T Ltd.,* we articulated the following generally applicable principle of law:

> Under the common law, by the great weight of authority, the assignee of rights, benefits, or privileges under a contract did not become responsible for the assignor's duties unless he expressly assumed performance of those duties. In other words, in the absence of an express manifestation of intention to accept the assignor's duties along with his rights and benefits, the assignee is presumed not to assume those duties, and they remain the obligation of the assignor.

---

**13.** Put another way, "under the common law there is no implied assumption by an assignee of his assignor's obligations under the original contract merely by virtue of the assignment." 79 Md.App. at 234, 556 A.2d 694.

**14.** We noted, however, that a different rule may apply to the assignment of a contract for the sale of goods governed by the U.C.C. 79 Md.App. at 238, 556 A.2d 694.

79 Md.App. at 238, 556 A.2d 694. *See also Homa v. Friendly Mobile Manor,* 93 Md.App. 337, 353, 612 A.2d 322 (1992) ("To be liable for duties under contract, the assignee must have assumed liability expressly."). *P/T Ltd.* remains a correct statement of the law. To be sure, the common law rules articulated in *P/T Ltd.* have been modified by the provisions of the Uniform Commercial Code but, as we have explained, the UCC provides no assistance to the Thompkinses in their action against Mountaineer.

Applying these principles to the facts at hand, the relevant question becomes whether the assignee expressly assumed the liabilities of the assignor. Here, the Thompkinses have pled no facts indicating that Mountaineer expressly assumed liability for any of the alleged violations; and, with no other authority in either the statutory or case law to support their contention that the assignee is derivatively liable for the lender's alleged SMLL violations, the Thompkinses' attempt to place liability on Mountaineer must fail.

Accordingly, the circuit court properly granted summary judgment in favor of Mountaineer.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. APPELLANTS TO PAY COSTS.**