*Marshall and Antoinette Thompkins v. Mountaineer Investments, LLC*
No. 43, September Term 2013

**Mortgages - Secondary Mortgage Loan Law ("SMLL") - Liability of Assignee under SMLL for Violation of SMLL by Lender in the Origination of the Loan.** An assignee of a secondary mortgage loan is not directly liable under the SMLL to the borrower for violations of the SMLL committed by the lender at the time of the origination of the loan, regardless of whether the assignee would be liable under provisions of the SMLL that govern repayment of the loan.

**Mortgages - Secondary Mortgage Loan Law ("SMLL") - Uniform Commercial Code ("UCC") - Derivative Liability of Assignee under UCC for Violation of SMLL by Lender in the Origination of the Loan.** An assignee of a secondary mortgage loan is not derivatively liable pursuant to Maryland Code, Commercial Law Article ("CL"), §3-306 of the UCC for violations of the SMLL committed by the lender at the time of the origination of the loan. Under CL §3-305 of the UCC, the borrower may assert a claim in recoupment with respect to such violations to reduce any amount owing to the assignee on the promissory note for the loan.

**Mortgages - Secondary Mortgage Loan Law ("SMLL") - Assignments - Derivative Liability of Assignee under Common Law for Violation of SMLL by Lender in the Origination of the Loan.** An assignee of a secondary mortgage loan is not derivatively liable under the common law for violations of the SMLL committed by the lender at the time of the origination of the loan.

Circuit Court for Baltimore City
Case No. 24-C-09-004213
Argued: December 6, 2013

IN THE COURT OF APPEALS

OF MARYLAND

No. 43

September Term, 2013

---

MARSHALL THOMPKINS, et ux.

v.

MOUNTAINEER INVESTMENTS, LLC

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Raker, Irma S. (Retired,
  Specially Assigned),

JJ.

---

Opinion by McDonald, J.

---

Filed: June 23, 2014

It has been said, with respect to the assignment of promissory notes for mortgage loans, that "most attorneys would rather slaughter hogs than contemplate the elements of negotiability."[1]  In this case we are called upon to decide whether an assignee of a second mortgage loan is responsible for certain statutory violations allegedly committed by the original lender when the loan was made.

The Maryland Secondary Mortgage Loan Law ("SMLL") provides specific protections for a borrower who obtains a loan by mortgaging a residential property that is already subject to a lien.  Among other things, that law also provides remedies for the borrower when a lender engages in prohibited practices when it originates the loan.  But what is the buyer's recourse for the violations of the SMLL that occur at the loan's origination when the lender who allegedly committed those violations no longer owns the loan, and perhaps no longer exists?  Does the borrower have any recourse against the current owner of the loan, inevitably an assignee?

Petitioners Marshall and Antoinette Thompkins obtained a loan by taking out a second mortgage on their residence secured by a deed of trust on that property.  On the day that the loan closed, the lender sold the loan to another entity.  As part of that transaction, the lender assigned the Thompkinses' promissory note and deed of trust to that entity.  Several years later, the purchaser of the Thompkinses' loan sold it in turn to Respondent Mountaineer Investments, LLC ("Mountaineer") – a transfer that was also effected by assignment of the

---

[1] D. J. Whaley, *Mortgage Foreclosures, Promissory Notes, and the Uniform Commercial Code*, 39 W. St. U. L. Rev. 313, 324 (2012).

loan instruments. Mountaineer thus became the "assignee" of the Thompkinses' promissory note and the deed of trust that secured the note. A few years after the Thompkinses had paid off the note and Mountaineer had released the deed of trust, the Thompkinses sued the original lender and Mountaineer for alleged violations of the SMLL committed by the lender at the time of the original loan transaction.

The Circuit Court and the Court of Special Appeals both held that the Thompkinses' effort to hold Mountaineer responsible for the sins of the original lender was legally untenable under both the SMLL itself and the other legal theories the Thompkinses advanced to extend the reach of the SMLL. The Court of Special Appeals held that their only recourse against an assignee like Mountaineer would be by way of recoupment – *i.e.*, the Thompkinses could reduce the loan payments owed to the assignee by amounts owed to them by the lender/assignor by virtue of the lender's violations of the SMLL. However, that remedy was not available to the Thompkinses because they filed suit only after they had paid off the loan. For the reasons outlined below, we agree with the well-reasoned opinion of the Court of Special Appeals.[2]

---

[2] While we may not have perfected the analysis of the application of the SMLL to the assignment of second mortgage promissory notes, we can assure that no hogs were harmed in the preparation of this opinion.

**Background**

**A.** *The Secondary Mortgage Loan Law*

The SMLL is a consumer protection measure that was designed to incorporate, complement, and prevent circumvention of the usury laws by limiting the interest, fees, and other charges that a lender could collect from a borrower as part of a second mortgage loan on a residential property. It was "designed to curb predatory practices that had caused many people, often minorities and older people who were in debt and ignorant of the intricacies of the law, to lose their homes and become subject to crushing deficiency judgments for hugely inflated interest, costs, and fees." *Drew v. First Guaranty Mortgage Corp.,* 379 Md. 318, 333, 842 A.2d 1 (2003) (Wilner, J., dissenting). It is "a law intended to guard the foolish or unsophisticated borrower, who may be under severe financial pressure, from his own improvidence. The law achieves this beneficent purpose by penalizing even the unwitting violator, to the extent of limiting him to recovery of the principal amount of the loan. This is consistent with the strong Maryland policy against usury." *Duckworth v. Bernstein*, 55 Md. App. 710, 724, 466 A.2d 517 (1983).

The SMLL is codified at Maryland Code, Commercial Law Article ("CL"), §12-401 *et seq.* It sets forth certain requirements that must be followed when a lender[3] extends a

---

[3] The statute defines "lender" as a licensee under the Maryland Mortgage Lender Law or a person who makes a secondary mortgage loan and is exempted from licensing under that law. CL §12-401(b). The Maryland Mortgage Lender Law is codified at Maryland Code, Financial Institutions Article ("FI"), §11-501 *et seq.*, and requires that a person obtain a

(continued...)

3

secondary mortgage loan to a borrower and also restricts in certain respects the terms of the

loan. The statute defines "secondary mortgage loan" as "a loan or deferred purchase price

secured in whole or in part by a mortgage, deed of trust, security agreement, or other lien on

real property located in the State, which property: (i) is subject to the lien of one or more

prior encumbrances, except a ground rent or other leasehold interest; and (ii) has a dwelling

on it designed principally as a residence with accommodations for not more than four

families." CL §12-401(i)(1).[4] As a general rule, the term does not include a loan to a

corporation or commercial loans in excess of $75,000. CL §12-401(i)(2).

---

[3] (...continued)
license from the Commissioner of Financial Regulation to act as a mortgage lender. That law excepts from its requirements various entities, such as banks, insurance companies, and government corporations, as well as individuals in defined circumstances (*e.g.*, a licensed real estate broker for certain loans to facilitate a sale by the broker, or an individual making a mortgage loan to certain relatives). *See* FI §11-502.

[4] A brief note on terminology is in order. Although the statute has been known as the "*Secondary* Mortgage Loan Law" since it was first enacted nearly 50 years ago (Chapter 390, Laws of Maryland 1967), it governs a category of loans that might be more accurately called "*second* mortgages." A "second mortgage " is generally defined as "a mortgage that is junior to a first mortgage on the same property ..." Black's Law Dictionary (9th ed. 2009) at 1103. In popular usage, the term "secondary" appears more frequently with the term "mortgage," in discussions of the "secondary mortgage market" – which denotes a market in which mortgages are bought and sold, often in pools. *Id.* at 1105. The secondary mortgage market has exploded in size in recent years. *See* Plank, *Regulation and Reform of the Mortgage Market and the Nature of Mortgage Loans: Lessons from Fannie Mae and Freddie Mac*, 60 S.C. L. Rev. 779, 794-98 (2009). At the time the SMLL was passed, however, it appears that the term "secondary mortgage" was used as a synonym for "second mortgage" (At that time, Black's Law Dictionary defined only "second mortgage" but had no entry for "secondary mortgage " or "secondary mortgage market." *See* Black's Law Dictionary (1968) at 1163). Thus, we use the phrase "secondary mortgage" in this opinion simply to denote a loan subject to the SMLL and not to suggest any necessary connection to the contemporary secondary mortgage market.

The SMLL regulates in certain respects the terms of repayment of the loan. Among other things, the SMLL sets a maximum rate of interest that may be charged for a secondary mortgage loan. CL §12-404. Under the statute, a borrower may prepay the loan at any time without penalty. CL §12-407(d). The statute also limits the frequency with which a lender may refinance a loan. CL §12-408.

The statute regulates, in some detail, the origination of such a loan. In particular, one who makes such a loan must be licensed to do so or come within an exemption to the licensing requirement. CL §12-402. The lender must consider the borrower's ability to repay the loan at the time the loan is made. CL §12-409.1(b). The SMLL also sets limits on origination fees, finder's fees, and other charges related to the placement of the loan. CL §§ 12-404.1, 12-405, 12-406. A broker's or finder's fee may be paid by the lender only to certain categories of professionals and only pursuant to a written agreement signed by the lender. CL §12-406. The statute also imposes certain disclosure requirements on the lender, most of which are to be made on forms developed by the Commissioner of Financial Regulation. CL §§12-407, 12-407.1.

The statute includes various other consumer protection provisions, including prohibitions against false advertising regarding the availability of secondary mortgage loans, against age discrimination in the granting of such loans, and against loan provisions that require the debtor to waive the protections of the SMLL. CL §§12-403, 12-403.1, 12-409. The statute generally prohibits a lender from offering or making a secondary mortgage loan

5

that is not in compliance with the SMLL and, more specifically, from "directly or indirectly" charging or receiving fees forbidden by the statute. CL §§12-411, 12-412.

Finally, the SMLL provides for both civil and criminal enforcement. CL §§12-413, 12-414. The civil remedy provision reads as follows:

> Except for a bona fide error of computation, if a lender violates any provision of [the SMLL] he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of [the SMLL] also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

CL §12-413. Thus, a lender who violates the SMLL is limited to collecting the principal amount of the loan and is not entitled to collect any interest or other charges. If the violation is "knowing," the borrower can recover a form of treble damages from the lender.

## B.    *The Loan*

On March 4, 1998, the Thompkinses obtained a secondary mortgage loan from Mortgage Lenders Network USA, Inc. ("Mortgage Lenders"). The principal amount of the loan was $60,075.00. The Thompkinses executed a promissory note that provided for interest at the rate of 13.99 per cent and provided for monthly payments over a 20-year period ending in March 2018. The note was secured by a deed of trust on the Thompkinses' residence. The Thompkinses also paid various fees to Mortgage Lenders when the loan was closed.

6

On the same day on which the loan was closed, Mortgage Lenders assigned the loan and the deed of trust to Master Financial, Inc. ("Master Financial"). By December 2005, Master Financial had assigned the loan to Mountaineer as part of a pool of mortgage loans.[5]

The Thompkinses paid off their secondary mortgage loan early on June 26, 2006. Mountaineer released the Thompkinses' deed of trust on August 4, 2006.

## C.    *The Lawsuit*

On July 7, 2009, more than three years after they had paid off the loan, the Thompkinses filed a complaint against Mortgage Lenders and Mountaineer in the Circuit Court for Baltimore City.[6] The complaint alleged that they had been charged fees in excess of those permitted under the SMLL in connection with the origination of the loan, that they

---

[5] There is some discrepancy in the record concerning the date that the Thompkinses' loan was assigned to Mountaineer. While the loan sale agreement is dated December 2, 2005 and an affidavit of an Account Officer for Mountaineer states that the loan was part of a pool of 41 loans that Mountaineer purchased from Master Financial on that date, the written assignment of the deed of trust to Mountaineer is dated May 13, 1998. Mountaineer conjectures that Master Financial executed an assignment of the Thompkinses' loan in blank in May 1998, but did not add Mountaineer's name to the document until the actual sale of the loan in 2005. The discrepancy in dates is not material to our decision in this case.

[6] In 2003, prior to Mountaineer's purchase of their second mortgage loan, the Thompkinses had filed a similar action against Mortgage Lenders and Master Financial alleging violations of the SMLL with respect to that loan. While that action was pending, Mountaineer purchased the loan from Master Financial in December 2005. Although Mountaineer had succeeded Master Financial as the assignee of the loan, the Thompkinses did not add Mountaineer as a defendant in that action. In September 2006, the trial court entered judgment against the Thompkinses. (As noted in the text, by that time, the Thompkinses had paid off their loan early and were no longer indebted to Mountaineer). Consolidated with a number of similar cases, that case was appealed and ultimately resulted in the decision in *Master Financial, Inc. v. Crowder*, 409 Md. 51, 972 A.2d 864 (2009), which is discussed later in this opinion.

7

had not received certain disclosures required by the SMLL at that time, and that both Mortgage Lenders and Mountaineer were liable for those violations.[7] The complaint did not allege that the interest rate was excessive or that the terms of the promissory note or its repayment otherwise violated the SMLL.

The complaint asserted that Mountaineer, as assignee of the note related to their second mortgage, "is subject to all the claims and defenses" which the Thompkinses could assert against Mortgage Lenders. The complaint cited a federal statute – the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §1641 – for the proposition that an assignee of the Thompkinses' second mortgage loan would be subject to all claims and defenses that could be made against the original lender. The complaint did not articulate a theory of assignee liability under State law.

Pursuant to CL §12-413, the Thompkinses sought disgorgement of the fees and interest they had paid to the original lender as well as treble damages. The first count of the complaint alleged a violation of the SMLL and sought $74,107.81 plus attorney's fees and

---

[7] The initial complaint and amended complaint both allude to a provision of the SMLL that prohibits a lender from charging a broker's or finder's fee without having entered into a separate written agreement for that purpose. *See* CL §§12-406, 12-805(d)(1). However, while the initial and amended complaint each allege that Mortgage Lenders charged a broker's fee, neither specifically alleges a violation of the statutory requirement – *i.e.*, the absence of a separate written agreement. The Thompkinses did make an explicit allegation of such a violation – *i.e.,* that there was no separate written agreement – in a summary judgment motion supported by the affidavit of Ms. Thompkins. In any event, this discrepancy has no bearing on the outcome of this appeal.

8

costs; the second count alleged a *knowing* violation of the SMLL and sought treble damages in the amount of $222,323.43 plus attorney's fees and costs.[8]

In February 2011, the Thompkinses filed an amended complaint that repeated the same allegations as the original complaint, eliminated the allegations related to HOEPA, recomputed and revised slightly downward the statutory damages sought, and added a request for pre-judgment interest. The amended complaint did not articulate a legal theory for assignee liability.

In pretrial motions, the Thompkinses argued that Mountaineer could be held derivatively liable for the alleged violations of the SMLL by Mortgage Lenders in the origination of the loan. Although the basis of that derivative liability was not always clear from their pleadings and other filings, the Thompkinses ultimately relied on two theories: (1) that Mountaineer was liable for those violations pursuant to the interaction of the Maryland Uniform Commercial Code ("UCC") with the SMLL, unless Mountaineer could establish that it was a holder in due course of the loan; and (2) that, under Maryland common law, an assignee is liable for a violation of the SMLL by its assignor.

The Circuit Court rejected the Thompkinses' theories and granted summary judgment in favor of Mountaineer. In its written decision, the Circuit Court noted that Mountaineer did not make the loan, was not a "lender" as defined in the SMLL, and did not impose or

---

[8] Shortly after the complaint was filed, Mountaineer removed the case to federal court. In April 2010, the federal court remanded the case to the Circuit Court without addressing the merits of the complaint.

collect any fees or other charges as a condition of making a loan.  The court looked to Mountaineer's status as an assignee of the loan to hold that it could not be found liable under the SMLL and found no basis for holding that it had expressly or impliedly assumed any liability of Mortgage Lenders under that statute when it was assigned the loan in 2005. Accordingly, the court held that  Mountaineer was entitled to judgment as a matter of law.[9]

The Thompkinses then voluntarily dismissed their claims against Mortgage Lenders[10] and appealed the Circuit Court's decision as to Mountaineer.  The Court of Special Appeals affirmed the Circuit Court's decision.  209 Md. App. 685, 61 A.3d 829 (2013).  It held that "an assignee of a second mortgage loan is not liable for the lender's violations of the SMLL when the loan has been paid in full unless the assignee (i) expressly assumed such liability or (ii) itself violated the SMLL."  209 Md. App. at 689.

---

[9] Some of the language of the Circuit Court's decision suggests that it also found that Thompkinses had failed to allege any violation of the SMLL, even by the lender.  The court stated that the lender collected "a loan origination fee in an amount less than the aggregate amount(s) allowed [by the SMLL], collected other "allowable fees," and had not withheld any form identified by the Thompkinses.  In the same vein, Mountaineer argues that this Court's intervening decision in *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 36 A.3d 399 (2012), which provided that itemized fees may be aggregated for purposes of assessing compliance with statutory cap in the SMLL, also undermines the allegation of excessive origination fees in the Thompkinses' complaint.

[10] Prior to the filing of the complaint, Mortgage Lenders had gone bankrupt.  It never appeared in the Circuit Court nor is it a party to this appeal, although it has been consistently listed as lead Defendant, lead Appellee, and lead Respondent in the papers filed at the various stages of this case.  We have corrected the caption of this case to reflect Mountaineer as the sole actual Respondent.

10

The Thompkinses filed a petition for certiorari with this Court, which we granted.

**Analysis**

***A.    Standard of Review***

Whether Mountaineer was entitled to summary judgment is a question of law. *Butler v. S & S Partnership*, 435 Md. 635, 665, 80 A.3d 298 (2013). Accordingly, we consider the questions raised in this appeal without according any special deference to the decisions of the Circuit Court or the Court of Special Appeals. *Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112, 119, 76 A.3d 1186 (2013).

We first confirm a threshold legal issue on which there appears to be no dispute – that the SMLL itself does not make an assignee directly liable for violations of the statute by the lender in the original loan transaction. We then consider the following two questions of law:

1 - Whether an assignee of a secondary mortgage loan may be held liable, pursuant to CL §3-306 of the Uniform Commercial Code, for violations of the SMLL allegedly committed by the lender in the origination of the loan; and

2 - Whether an assignee of a secondary mortgage loan may be held liable, pursuant to Maryland common law, for violations of the SMLL allegedly committed by the lender in the origination of the loan.

***B.    Whether an Assignee is Liable under the SMLL for the Lender's Violations
of the SMLL in the Origination of the Loan***

As the Thompkinses appear to concede, the SMLL itself does not provide that an assignee of a lender is liable for the lender's violations of that statute at the time the loan was

11

made. In contrast to certain other statutory schemes in the Commercial Law Article, the SMLL does not include a specific reference to assignments or assignees. *See, e.g.,* CL §12-109.2(a)(3) (for purposes of statute concerning funds placed in escrow accounts, defining "lender" to include "a lender and an assignee of a lender"); CL §12-1001(g)(2)(iii) (for purposes of statute governing closed end credit loans, defining "credit grantor" to include "[a]ny person who ... obtains the assignment ..." of such an agreement); CL §12-901(f)(2)(iii) (in statute governing revolving credit plans, defining "credit grantor" to include an assignee); *see also Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83, 109-14, 85 A.3d 167 (2014) (holding that assignee of closed end credit loan contract was subject to same statutory obligations as original lender). Some courts have noted the absence of the use of the term "assignee" in the statute[11] and suggested that the statute does not create any liability for an assignee of a secondary mortgage loan. *See Fulmore v. Premier Financial Corp.*, 2010 WL4286362 at *2 n.1 (D. Md. 2010), *aff'd on other grounds sub nom. McLeod v. PB Inv. Corp.*, 492 Fed. Appx. 379 (4th Cir. 2012).

On the other hand, the statute is not entirely bereft of the notion that a loan may be assigned. CL §12-404.1 modifies certain restrictions concerning the origination of a second mortgage loan when the loan is to be purchased by – *i.e.,* assigned to – certain government related instrumentalities. And certain provisions of the SMLL clearly apply during the life

---

[11] The statute prohibits the mortgage agreement from providing for the "[a]ssignment ... for the payment of wages" (CL §12-409(3)) – a provision that has nothing to do with assignment of the mortgage itself.

12

of the loan and may therefore directly limit the conduct of assignees. *See, e.g.*, CL §12-404 (imposing an interest rate cap); CL §12-407(d) (ensuring buyer's right to pre-pay loan). CL §12-404(c)(2) (buyer's right to one-time postponement of balloon payment). Some of those restrictions may also be incorporated in the promissory note itself, but some may not. *See Drew v. First Guaranty Mortgage Corp.* 379 Md. 318, 321-22 n.3, 842 A.2d 1 (2003) (holding that assignee of second mortgage was required to allow postponement of balloon payment, although not required to state in writing that postponement was available, but not deciding whether civil remedy under CL §12-413 would apply). It seems unlikely that the General Assembly intended that key ongoing protections of the SMLL – *e.g.*, the prohibition against a usurious interest rate – could be defeated simply by assigning the promissory note.[12] *Cf. Brenner v. Plitt*, 182 Md. 348, 34 A.2d 853 (1943) ("no subterfuge shall be permitted to conceal [a usurious loan]").

These examples deal with ongoing regulation of a loan, whereas this case concerns fees charged and disclosures made (or not made) at the origination of the loan. No provision of the SMLL suggests that an assignee of a lender would be directly liable under the statute

---

[12] The State usury law provides an instructive comparison. That law limits the amount of interest that a "lender" may charge. *See, e.g.,* CL §12-103. The definition of "lender" in that statute does not explicitly include an assignee of the loan. CL §12-101(f). While one section of the statute states that it does not provide a remedy against an assignee of a usurious loan who took the assignment for a "bona fide and legal consideration without notice of any usury in its creation" (CL §12-112), it implicitly allows a usury action to be brought against an assignee that cannot satisfy that condition. *See Arrington v. Colleen, Inc.*, 2001 WL 34117735 at *9 (D. Md. 2001).

for the lender's violations in originating a loan by charging an excessive origination fee or failing to make a required disclosure, as alleged in the complaint in this case.

**C.      *Whether the UCC Extends Liability to an Assignee for a Lender's Violations of the SMLL in the Origination of the Loan***

A promissory note executed as part of mortgage loan and the related security interest (the deed of trust) are subject to the UCC, which is codified at Titles 1 through 10 of the Commercial Law Article.  *See Shepherd v. Burson*, 427 Md. 541, 551, 50 A.3d 567 (2012). The Thompkinses argue that, although Mountaineer may not be directly liable for the lender's alleged violations of the SMLL in the origination of the loan, it may be derivatively liable through CL §3-306 of the UCC.

CL §3-306 provides:

> A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds.  A person having rights of a holder in due course takes free of the claim to the instrument.

The Thompkinses assert that the alleged violations of the SMLL by Mortgage Lenders confer on them "a claim of a property or possessory right in [their promissory note] or its proceeds" and that, under CL §3-306, Mountaineer took the note free of that claim only if it had the rights of a holder in due course.  The application of CL §3-306 in this context depends on whether the Mortgage Lenders' alleged violations of the SMLL created such a "claim" in favor of the Thompkinses.  The answer to this question depends on the nature of the cause

14

of action asserted by the Thompkinses under the SMLL and the nature of "a claim of a property or possessory right in the instrument or its proceeds" mentioned in CL §3-306.

As the Court of Special Appeals noted in its opinion in this case, this Court has previously addressed that question in a case involving claims similar to those made by the Thompkinses in this case in *Master Financial, Inc. v. Crowder*, 409 Md. 51, 972 A.2d 864 (2009).[13] (As in this case, there was no allegation of ongoing violations of the SMLL – *e.g.*, an interest rate that exceeded the statutory cap or the exaction of a prepayment penalty). In that case, the Court described the nature of the claims asserted under the SMLL in relation to the notes and deeds of trust that documented and secured the respective second mortgage loans:

> [T]hese [SMLL] actions are not on the notes or deeds of trust. The plaintiffs are not seeking to enforce those instruments, or to *invalidate or reform them based on any imperfection in the instruments themselves.* The sole bases of their complaint under the SMLL are that (1) the lender was not property licensed; (2) they were charged excessive origination fees, and (3) they were not given a disclosure form supposedly required by the statute, and the only remedies sought were those provided by CL §12-413. *Those alleged facts and the consequences of them are entirely extraneous to the notes and deeds of trust. ...*

409 Md. at 64 (emphasis added).

---

[13] Indeed, among the claims under the SMLL at issue in *Crowder* were those asserted by the Thompkinses in their first lawsuit against Mortgage Lenders and Master Financial. *See* footnote 6 above.

The Thompkinses allege that they were "charged excessive origination fees."  As in *Crowder*, the Thompkinses' claims under the SMLL in this case do not concern the validity of any term of the note or deed of trust, are "extraneous to the note and deed of trust," and are not claims against the note or deed of trust.[14]  Nor can the Thompkinses' claims be properly characterized as "claim[s] of a ... property ... right in the instrument or its proceeds." The primary remedy provided by CL §12-413 would permit a borrower to forgo interest payments – in other words, it does not assign the property right in the proceeds of the note; rather, it potentially eliminates part of the proceeds.  The treble damage remedy in CL §12-413 for a knowing violation is a forfeiture that cannot possibly be characterized as "proceeds" of the note.

As this Court found in *Crowder*, and the Court of Special Appeals noted in its decision, such a claim brought under CL §12-413 is not a claim that seeks to enforce an instrument or to "invalidate or reform them based on any alleged imperfection in the instruments themselves." *Crowder*, 409 Md. at 64.  We therefore agree with the Court of Special Appeals that the Thompkinses' claims are not within the purview of CL §3-306.[15]

---

[14] As recounted earlier, by the time the Thompkinses filed their complaint in this action, they had fully paid off the note.  *See* footnote 6 above.

[15] In its brief, Mountaineer argues that, even if CL §3-306 created derivative liability for an assignee for a lender's violations of the SMLL, it would not be subject to such liability because it would qualify as a holder in due course, noting that the Circuit Court had observed that "nothing in the record ... suggest[s] that Mountaineer did not purchase the 41-loan pool for value, in good faith, and without notice that the [Thompkinses] then had a claim ...."  We need not reach this question, however, to decide this case.

This analysis is confirmed by consideration of the official comment to CL §3-306 and

of a related provision of the UCC.[16] At the time the Maryland General Assembly adopted

the current version of CL §3-306,[17] the official comment read as follows:

> This section expands on the reference to "claims to" the
> instrument mentioned in former Sections 3-305 and 3-306.
> Claims covered by the section include not only claims to
> ownership but also any other claim of a property or possessory
> right. It includes the claim to a lien or the claim of a person in
> rightful possession of an instrument who was wrongfully
> deprived of possession. Also included is a claim based on
> Section 3-202(b) for rescission of a negotiation of the
> instrument by the claimant. *Claims to an instrument under
> Section 3-306 are different from claims in recoupment referred
> to in Section 3-305(a)(3).*

(emphasis added).[18] The official comment thus distinguishes a "claim to an instrument"

---

[16] The official comments to the sections of the UCC are provided by the National Conference of Commissioners on Uniform State Laws ("Uniform Law Commissioners"), who drafted the UCC for adoption by state legislatures. The official comments are used as an aid toward interpreting the UCC in a manner "[t]o make uniform the law among the various jurisdictions." CL §1-103(b)(3). Accordingly, while not controlling authority, "they are an excellent place to begin a search" for legislative intent. *Jefferson v. Jones*, 286 Md. 544, 548, 408 A.2d 1036 (1979).

[17] The current version of CL §3-306 was adopted as part of the revised Article 3 of the UCC. *See* Chapter 91, §2, Laws of Maryland 1996. At the time that the General Assembly adopted the revision, the official comment quoted in the text was before the Legislature. *See* bill files for Senate Bill 40 (1996) and House Bill 24 (1996).

[18] In 2002, the Uniform Law Commissioners added another sentence to the official comment: "The rule of this section is similar to the rule of Article 30(2) of the Convention on International Bills of Exchange and International Promissory Notes." *See* 2 Uniform Laws Annotated (2004) at 169-70. Article 30(2) provides that "The rights to an instrument of a protected holder are not subject to any claim to the instrument on the part of any person, except a valid claim arising from the underlying transaction between himself and the person

(continued...)

17

governed by CL §3-306 from a "claim in recoupment" under CL §3-305.[19] The latter section

provides in pertinent part:

> (a)   Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:
>
> *             *             *
>
> (3)   A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.
>
> (b) The right of a holder in due course to enforce the obligation of a party to pay the instrument ... is not subject to ... claims in recoupment stated in subsection (a)(3) against a person other than the holder.

---

[18] (...continued)
by whom the claim is raised."  United Nations Convention on International Bills of Exchange and International Promissory Notes, United Nations (1988).

[19] A claim in recoupment has been defined, and distinguished from related concepts, as follows:

> "[R]ecoupment" means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of the same transaction on which the adversary's claim is based; "setoff" means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of a transaction other than that on which the adversary's claim is based; and "counterclaim" means the assertion of a right to have an affirmative judgment against the adversary based upon a setoff or recoupment.

*Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 380, 744 A.2d 549 (2000).

18

CL §3-305(a)(3), (b).

A score card for this case would indicate the following for purposes of CL §3-305: the promissory note for the Thompkinses' second mortgage is the "instrument"; the Thompkinses are the "obligor" with respect to that instrument; Mortgage Lenders is the "original payee" of that instrument; Mountaineer is a "transferee" of the instrument; and the "claim in recoupment ... [that] arose from the transaction that gave rise to the instrument" is the asserted right of the Thompkinses against Mortgage Lenders for statutory penalties under CL §12-413 for Mortgage Lenders' alleged violation of the SMLL in the original loan transaction. Applied to this case, then, CL §3-305 translates as follows: the Thompkinses' claims under CL §12-413 against Mortgage Lenders could have been asserted against Mountaineer "only to reduce the amount owing on the [promissory note] at the time the action is brought" and only if Mountaineer was not a holder in due course of the promissory note.

Under CL §3-305, the Thompkinses could have asserted a claim in recoupment against Mountaineer based on the alleged violations of the SMLL by Mortgage Lenders to reduce the amount they owed Mountaineer, unless Mountaineer could establish that it was a holder in due course of the Thompkinses' promissory note. But, as previously noted, the Thompkinses paid the loan in full before they filed suit against Mountaineer. There is no need to decide whether Mountaineer is a holder in due course, as no amount remained due

19

on the promissory note at the time the action was brought and, accordingly, there is no amount against which their claim in recoupment can be made.

This analysis of the application of CL §3-305 to the Thompkinses' claims buttresses our conclusion that CL §3-306 does not extend derivative liability to an assignee for a lender's violations of the SMLL in the original loan transaction.  It is a commonplace that the sections of a statute should be read together as a coherent whole.  *See, e.g., Lockshin v. Semsker*, 412 Md. 257, 275-76, 987 A.2d 18 (2010).  That canon of construction is particularly apt when the two provisions under consideration were drafted to work together as part of a model law.  As the federal district court has observed, if we were to read CL §3-306 in the manner suggested by the Thompkinses, it would render the "carefully drawn provisions" of CL §3-305(a)(3) and (b) meaningless.[20]  *See Fulmore*, *supra,* 2010 WL 4286362 at *4.

### D.  *Whether the Common Law Extends Liability to an Assignee for a Lender's Violations of the SMLL in the Origination of the Loan*

The Thompkinses contend that, even if Mountaineer is not derivatively liable, pursuant to CL §3-306 of the UCC, for Mortgage Lender's alleged violations of the SMLL in the origination of the loan, Mountaineer is derivatively liable under Maryland common law.  The Thompkinses argue that an assignee "stands in the shoes of the originating lender,"

---

[20] Our conclusion with respect to the application of CL §3-306 is also consistent with the historic origins of the policy that allows for the "free transferability of negotiable paper." *United Overseas Bank v. Veneers, Inc.*, 375 F. Supp. 596, 609 (D. Md. 1973).

and that the "assignee of a mortgage takes only what the loan originator had the legal right to assign and, for this reason, the assignee was always subject to claims that could be raised by the borrower against the lender."

The Thompkinses are correct in noting that Maryland courts have long employed shoe imagery in describing the status of an assignor. *See, e.g.*, *Textor v. Orr*, 86 Md. 392, 38 A. 939 (1897); *Annan v. Houck*, 4 Gill 325, 328, 45 Am. Dec. 133 (1846); *Kemp's Ex'x v. M'Pherson*, 7 H. & J. 320, 336 (1826). The question is how far those shoes take the assignee – what rights and obligations of the assignor does the assignee assume?

In a recent case, we noted that an agreement to assign an interest or rights may also assign related duties and liabilities of the assignor to the assignee. *Pines Plaza Limited Partnership v. Berklely Trace, LLC,* 431 Md. 652, 669, 66 A.3d 720 (2013). When the parties' agreement does not expressly state whether the assignment includes such a delegation, the law must do it for them. In some circumstances, such as the assignment of a contract for the sale of real property, Maryland law presumes that the assignee does *not* assume the assignor's obligations and liabilities – a default rule that the *Pines Plaza* decision referred to as a "non-delegation presumption." 431 Md. at 665. In certain other instances, such as an assignment of a contract for the sale of goods (*see* CL §2-210(5)) Maryland law takes the opposite course and presumes that the assignee assumes the assignor's obligations – a default rule that the *Pines Plaza* decision termed the "delegation presumption." *Id.* at 666.

21

The Thompkinses cite a number of cases in support of their argument that an assignee of a second mortgage loan, like Mountaineer, is derivatively liable under the common law for a lender's violation of the SMLL in the origination of the loan. *See, e.g., Cumberland Coal & Iron Co. v. Parish*, 42 Md. 598, 1875 WL 4907 (1875); *Farmers' & Merchants' Nat'l Bank v. Anderson*, 152 Md. 641, 137 A.367 (1927); *Whistler v. Hanna*, 152 Md. 597, 137 A. 276 (1927); *Ressmeyer v. Norwood*, 117 Md. 320, 83 A. 347 (1912); *James v. Goldberg*, 256 Md. 520, 261 A.2d 753 (1970); *Webb v. Baltimore Commercial Bank*, 181 Md. 572, 31 A.2d 174 (1943). The Court of Special Appeals carefully analyzed most of the cases cited by the Thompkinses and concluded that they were either distinguishable factually or involved actions to enforce or rescind a note, not actions seeking damages for violation of the SMLL. 209 Md. App. at 701-06 & n.12. There is no need to restate the details of that analysis in this opinion.[21]

In our view, the Court of Special Appeals correctly determined that there is no basis in Maryland common law to conclude that an assignment of a second mortgage loan

---

[21] The only case not specifically distinguished by the intermediate appellate court was *Webb v. Baltimore Commercial Bank*. In *Webb*, an assignee of the proceeds of an agreement attempted to recover from a bank the proceeds of checks related to that agreement that the assignor had fraudulently cashed and deposited in an account at the bank. The Court held that the bank was a holder in due course and, in any event, to the extent that the assignee was subrogated to the assignor's claims against the bank, any such claims were barred by limitations. Despite language in the decision to the effect that an assignee takes a debt subject to the same defenses and equities as its assignor, the case is not analogous to this case. Like other cases cited by the Thompkinses, it did not involve an attempt to impose affirmative derivative liability on an assignee for an assignor's misconduct in the origination of a loan.

necessarily or presumptively involves the assignee's assumption of whatever liability the assignor or original lender may have for violations of the SMLL committed at the origination of the loan. In other words, no "delegation presumption" applies with respect to such liabilities in the assignment of a second mortgage. Nor, in this case, is there any indication that the assignee – Mountaineer – expressly assumed such liabilities.

## Conclusion

For the reasons stated above, we hold:

1 - An assignee of a second mortgage loan is not liable for violations of the SMLL committed by the lender when the loan was originated, even though the assignee may be liable for any violation of the SMLL that the assignee itself commits in connection with repayment of that loan.

2 - CL §3-306 does not extend derivative liability to an assignee of a secondary mortgage loan for a violation of the SMLL committed by a lender in the origination of the loan. Pursuant to CL §3-305, however, a borrower who has such a claim against a lender may be permitted to reduce any amount owed to an assignee under the promissory note by the amount of the claim. If the borrower has paid the loan in full, the borrower has no claim in recoupment against the assignee.

3 - An assignee of a secondary mortgage loan is not derivatively liable under the common law for a violation of the SMLL by the lender in the origination of the loan, unless the assignee has expressly assumed the lendor's or other assignor's liability.

23

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**